## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| LONG PT. COOPER INVESTMENT GROUP LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 2:16-cv-03036-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| TOWN OF MOUNT PLEASANT, MOUNT PLEASANT WATERWORKS, and CLAY DUFFIE, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on defendants Mount Pleasant

Waterworks (MPW) and Clay Duffie's ("Duffie") motion for summary judgment, ECF

No. 45, and defendant Town of Mount Pleasant's ("the Town") motion for summary

judgment, ECF No. 46. For the reasons set forth below, the court grants the motions.

## I.  BACKGROUND

The case arises from a dispute over sewer services. Plaintiff Long Pt. Cooper

LLC ("Long Pt. Cooper")[1] purchased two pieces of property ("the Properties") in an

unincorporated area of Charleston County that is contiguous to the Town's boundaries.

The Properties were previously used as a concrete facility, and they have septic tanks

instead of sewer service. Long Pt. Cooper alleges that prior to purchasing the Properties,

the members of Long Pt. Cooper met with then Mayor Billy Swails, and he expressed a

desire that the Properties be developed. Long Pt. Cooper explains that prior to closing

---

[1] Long Pt. Cooper consists of three members: George Sarkis, Roberta Gosselin, and Randy Cooper.

the sale, it knew that the Properties did not have sewer service, but it still purchased the Properties in reliance on its conversations with Mayor Swails and the fact that it expected that MPW would still provide sewer service even if the Town did not approve an annexation petition.

Long Pt. Cooper contends that it worked with the Town to create a development plan for the Properties that the Town would accept. On June 25, 2014, Long Pt. Cooper submitted petitions for annexation of the Properties into the Town. Over the next year, Long Pt. Cooper amended its petitions, and the final petitions requested: (1) annexation; (2) zoning of the Properties as PD, or Planned Development; and (3) an amendment the Town's Comprehensive Plan. Long Pt. Cooper alleges that the Town frequently considers these types of requests within a petition as a bundle of requests instead of separate requests.

On November 10, 2015, the Town Council considered the petitions for the first time. When considering the petitions, one of the council members asked how the Properties would be zoned if they were annexed. ECF No. 45-4 at 3. Another council member responded that absent a zoning request, it would come zoned as R-1, which is low-density residential. Id.; ECF No. 46-1 at 2. The Town contends that is unknown what zoning classification the Properties would have ultimately been given after annexation because Long Pt. Cooper withdrew its petitions, preventing the Town from making a zoning determination; however, Long Pt. Cooper asserts the Town would have imposed a default R-1 zoning, making it impractical for Long Pt. Cooper's development plans. ECF No. 45-4 at 1. The Town Council ultimately voted to approve the annexation requests but to deny the zoning requests and the requests for an amendment to the

Comprehensive Plan. Long Pt. Cooper alleges that this piecemeal treatment of its petitions is contrary to the Town's previous treatment of petitions of this nature, which are normally approved in full or denied in full.

Long Pt. Cooper alleges that the Town Council's acceptance of the annexation requests but denial of the zoning requests forced Long Pt. Cooper to withdraw the petitions prior to the Town Council's second reading. In its letter withdrawing the petitions, Long Pt. Cooper stated that it was doing so "[b]ecause the default R-1 zoning the Town would impose on the parcels is impractical, financially unfeasible, out of keeping with the surrounding development and the applicant's intended use, and a massive downzoning of the properties." ECF No. 45-5 at 1. In other words, Long Pt. Cooper believed that once annexed, the Properties would be zoned so that Long Pt. Cooper could not profitably develop the land. The Town accepted the letter and withdrew the petitions prior to the Town Council's second reading, meaning that the Properties were not annexed into the Town.

In January 2016, Long Pt. Cooper made a written request and application to MPW for sewer service for the Properties. MPW responded with a letter on January 26, 2016 acknowledging its receipt of Long Pt. Cooper's request. MPW then sent a form to the Town to determine if the Properties were contiguous, and the Town completed the form, confirming that the Properties were contiguous. The Town's lawyer subsequently sent an email to MPW's lawyer telling MPW that the Town's position was that the Properties' annexation was neither approved nor denied because Long Pt. Cooper withdrew its petitions. This fact is crucial, because according to § 51.092 of the Town's ordinances,

MPW may only provide sewer services to Properties that have been annexed or denied annexation.  The ordinance states:

> (A) Contiguous Properties.  Annexation into the Town is required as a condition prior to the Mount Pleasant Town Waterworks providing sanitary sewer to any lot, parcel, or piece of land located outside the corporate limits of the Town and contiguous to the Town limits.
> (B)  Denied Contiguous Properties.  If a formal annexation petition on any lot, piece, or parcel of land, located outside the corporate limits of the Town and also contiguous to the Town, is denied by the Town, or if Town Council make[s] such a determination on its own motion without a petition, sanitary sewer services may be provided by the Mount Pleasant Waterworks to such property, notwithstanding division (A) of this Section.

Am. Compl. ¶ 15.  Pursuant to the Town's position on the annexation issue, MPW denied sewer service to the Properties because the Properties were neither annexed, as required by § 51.092(A), nor had their annexation petitions been denied, as required by § 51.092(B).  Long Pt. Cooper alleges that there is no process for the Town to communicate annexation status to MPW and that it was unusual for the Town to communicate with MPW about this issue.

MPW also contends that it denied sewer service to the Properties because the Properties did not comply with MPW's Guidelines for Development, which state:

> Any property that has wastewater service available and is not within the Town limits of Mount Pleasant [ ] will be referred to the Town of Mount Pleasant Planning Department to ensure compliance with the Town's Sewer Use Ordinance, Annexation for Sewer Services requirements.  The Engineering Department cannot provide service until notification is received from the Town Planning Department that annexation requirements have been met.

ECF No. 45-1 at 6–7.  Long Pt. Cooper contends that it is unclear whether MPW is actually obligated to abide by the Town's annexation decisions based on statements made by the current Mayor of the Town.

As a result of the denial of sewer service to the Properties, Long Pt. Cooper filed this action in the Court of Common Pleas for the County of Charleston, South Carolina on May 4, 2016.  Long Pt. Cooper amended its state court complaint on August 10, 2016 and now seeks: (1) a declaratory judgment declaring that the Town denied Long Pt. Cooper's annexation petitions and that Long Pt. Cooper has satisfied the requirements of § 51.092 of the Town's ordinances; (2) a writ of mandamus compelling Duffie and MPW to provide sewer service the Properties; (3) a mandatory injunction compelling MPW to provide sewer service to the Properties; (4) a mandatory injunction compelling MPW to provide sewer service to the Properties based on MPW and the Town's violation of Long Pt. Cooper's rights to substantive due process and equal protection; (5)  a mandatory injunction compelling MPW to provide sewer services to the Properties based on MPW and the Town's deprivation of Long Pt. Cooper's rights, privileges, or immunities in violation of 42 U.S.C. § 1983; and (6) actual damages arising from the diminished value of the Properties and the lost profits from Long Pt. Cooper's inability to develop the Properties.

The Town removed the case on September 7, 2016 on the basis of federal question jurisdiction arising from the substantive due process and equal protection claims.  MPW and Duffie filed a motion for summary judgment on October 19, 2018.  ECF No. 45.  The Town filed a motion for summary judgment on the same day.  ECF No. 46.  Long Pt. Cooper responded to both motions on November 16, 2018, ECF No. 40, and the Town replied on November 30, 2018, ECF No. 53.

The court held a hearing on the motions on February 14, 2019. The motions are now ripe for review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III.  DISCUSSION

The court grants summary judgment as to all of Long Pt. Cooper's claims because they can all be resolved on a legal basis, and there are no genuine issues of material fact that could affect their outcome. All of Long Pt. Cooper's actions stem from its characterization of the Town's treatment of the Properties' petitions as a de facto denial.

6

However, as discussed below, the court finds that the Town's treatment of the petitions was not a de facto denial. Moreover, MPW's denial of sewer services to the Properties did not violate Long Pt. Cooper's substantive due process rights because under South Carolina law, Long Pt. Cooper does not have a property interest in sewer services. Summary judgment is also warranted for Long Pt. Cooper's equal protection claim because Long Pt. Cooper has presented no evidence that the Properties were treated differently than other similarly situated properties. And as a result of summary judgment on these first three claims, the remaining causes of actions cannot survive.

### A. Declaratory Judgment

Long Pt. Cooper first seeks a declaratory judgment from the court that the Town's treatment of its petitions was a de facto denial. The Town, MPW, and Duffie (collectively, "defendants") argue that there was no de facto denial because Long Pt. Cooper voluntarily withdrew its petitions, and the concept of a de facto denial has never been applied in such a context. Moreover, the Town argues that determining the Town de facto denied the petitions would require the court to delve into a local land dispute, which it should avoid doing for prudential reasons. The court finds that the Town did not de facto deny Long Pt. Cooper's petitions.

### 1. Legal Basis for Declaring a De Facto Denial

The Town argues that Long Pt. Cooper provides no basis in the law for the court to declare that the Town's action of approving the annexation portion of the petitions but denying the zoning portion was a de facto denial of the petitions. The Town explains that the concept of de facto denial is typically used when a governmental authority fails to timely act on a land-use request or application. Long Pt. Cooper responds that there is

7

legal authority supporting the proposition that a de facto denial occurs when a government entity grants a request but attaches unreasonably onerous conditions to the approval, which is what Long Pt. Cooper argues occurred here. However, none of the cases to which Long Pt. Cooper cites relate to land use nor do they meaningfully discuss the meaning of a de facto denial, making their mention of de facto denial inapplicable to the instant case.

Long Pt. Cooper first cites to Almar Ranch, LLC v. Boise, 2010 WL 1727844 (D. Idaho Apr. 27, 2010). Almar Ranch is a Fair Housing Act case in which the plaintiffs brought a disparate treatment claim, among others. Id. at *6. One of the elements of disparate treatment, as applied to the case, was that the defendant denied the plaintiffs' permit. Id. at *5. The plaintiffs argued that their application for a permit was constructively denied because the defendant imposed unreasonably expensive conditions on the permit, making the housing project at issue unfeasible. Id. at *6. The defendant argued that the conditions were not unfeasible and disputed the characterization of a construction denial. The court found that there were genuine issues of material fact as to whether the defendant denied the permit and denied the motion for summary judgment. However, Almar Ranch contains no legal discussion about what qualifies as a de facto denial. The court simply explained the parties' arguments and then found a genuine issue of material fact. Therefore, this case provides no guidance on whether the Town's actions were a de facto denial.

Long Pt. Cooper also cites to Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs, 617 N.W.2d 566 (Minn. 2000); however, there the court only referenced the de facto denial of the permit when describing the procedural history of the case. Id. at 570.

8

The Minnesota Court of Appeals had found that the defendant had de facto denied the permit because its approval of the permit contained a special condition that was known to be unacceptable to the plaintiff. However, the Supreme Court of Minnesota did not discuss this de facto denial any further and ultimately reversed the opinion of the Court of Appeals. Id. at 580. Moreover, the other two cases cited by Long Pt. Cooper discuss "de facto" or "constructive" denials in a hypothetical context and are simply inapplicable to this case. See Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of Seattle, 550 F.3d 788, 793 (9th Cir. 2008) (noting that a constructive denial of a parade permit could occur if police confined marchers to the sidewalk but not finding that to be the case); Mobile Commc'ns Corp. of Am. v. F.C.C., 77 F.3d 1399, 1404 (D.C. Cir. 1996) (briefly explaining that "interpreting an application as one for a license subject to any condition of the Commission's choosing would permit the Commission to foreclose judicial review of a de facto denial by couching its decision as an approval subject to some intolerable condition" but going on to clarify that "[w]hether or not this is true is immaterial for present purposes").

Indeed, the only Fourth Circuit cases located by the court that discuss a de facto denial or constructive denial do so when a party fails to act on an application for an extended period of time. See Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 272 (4th Cir. 2013) ("Under these circumstances, the HOA's failure to take any action for such an extended period operated as a constructive denial of the ATV request."); Davis v. Rao, 982 F. Supp. 2d 683, 694 (E.D. Va. 2013), aff'd, 583 F. App'x 113 (4th Cir. 2014) (calling the defendant's decision about the plaintiff's tenure position a "de facto denial" because the defendant did not respond to the plaintiff's appeal after

being denied tenure); <u>Piotrowski v. Wells Fargo Bank</u>, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013) ("Failing to act on an application for credit is a de facto denial.").  And again, none of these cases relate to land-use decisions made by a local municipality. Therefore, it is irrelevant whether "there is a genuine issue of material fact as to whether [Long Pt. Cooper] had any feasible option to proceed any way other than it did," ECF No. 49 at 16, because that factual issue plays no role in the court's determination here.

Here, it is undisputed that the Town Council acted by approving the annexation of the Properties but denying the zoning request.  ECF No. 45-4 at 3–4.  As such, the Town did not fail to act on a first reading and vote of the petitions.  Moreover, there is no dispute that Long Pt. Cooper withdrew its petitions before the second reading, ECF No. 45-5 at 1, meaning that the Town did not fail to act on a second reading.  Therefore, this was not a scenario where the Town did not act on Long Pt. Cooper's petitions for such a long period of time as to deny it de facto.  As such, the court finds that the Town's treatment of the petitions was not a de facto denial.

### 2.  Prudential Concerns

Even if there were case law that provided support for the court to declare a de facto denial here, there are prudential concerns that prevent the court from doing so.  As the Fourth Circuit explains, "land-use decisions are a core function of local government." <u>Gardner v. City of Baltimore Mayor & City Council</u>, 969 F.2d 63, 67 (4th Cir. 1992).  As such, "[r]esolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts." <u>Id.</u>  Therefore, "federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes." <u>Id.</u> at 68; <u>see also</u> <u>Pulte</u>

Home Corp. v. Montgomery Cty., Maryland, 909 F.3d 685, 688 (4th Cir. 2018) ("This court has stated repeatedly in similar cases, and as recently as last year, that federal courts are not the appropriate forum to challenge local land use determinations.").

Long Pt. Cooper argues that this is not a land-use decision because it does not challenge the validity of the Town's decision to deny the zoning request but instead requests a declaration that the Town denied the entire petitions. However, interpreting the Town's decision to approve the annexation request and deny the zoning request, which was a land use decision, as the Town denying the entire petitions would, in effect, change the Town's decision. The court would change the annexation approval to an annexation denial. Moreover, annexation decisions clearly relate to the use of land. As such, the court finds it difficult to understand how this could be anything but a land-use decision. Long Pt. Cooper also dismisses this law as dicta. But even if it were, the court sees no problem relying on dicta when considering prudential concerns, because prudential concerns are not necessarily hard-and-fast rules of law but instead are used "to assist [courts] in the difficult task of discerning which cases the Constitution forbids them from hearing." Corrie v. Caterpillar, Inc., 503 F.3d 974, 981 (9th Cir. 2007).

Given both the lack of legal authority that would allow the court to declare a de facto denial as well as the prudential concerns, the court grants summary judgment on the declaratory action.[2]

---

[2] Moreover, characterizing Long Pt. Cooper's withdrawal of its petitions as a de facto denial is undesirable from a policy perspective. Doing so would open the door for developers to submit annexation petitions, withdraw them, and then be entitled to sewer services. This would allow developers to circumvent the established process for obtaining sewer services and would make the Town's annexation decision meaningless.

### B. Substantive Due Process

Next, Long Pt. Cooper alleges that defendants' refusal to provide sewer services to the Properties violates Long Pt. Cooper's right to substantive due process. For a plaintiff to succeed on a substantive due process claim such as this one, "he must show '(1) that [he] had property or a property interest; (2) that the state deprived [him] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'" Quinn v. Bd. of Cty. Commissioners for Queen Anne's Cty., Maryland, 862 F.3d 433, 443 (4th Cir. 2017), cert. denied sub nom. 138 S. Ct. 1593 (2018) (quoting Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 827 (4th Cir. 1995)). "If there is no cognizable property interest, there is no need to reach the question of whether a purported deprivation was arbitrary or capricious." Gardner, 969 F.2d at 68. Therefore, the court must first determine whether Long Pt. Cooper had a cognizable property interest in sewer services.

Property interests are created not by the Constitution but by independent sources, such as state law. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Under South Carolina law, there is no protected property interest in sewer services. Sunset Cay, LLC v. City of Folly Beach, 593 S.E.2d 462, 470 (S.C. 2004). However, Long Pt. Cooper argues that it has a property interest that was created by § 51.092 of the Town's ordinances. Long Pt. Cooper contends that it has a constitutionally protected interest in the Properties being treated as "denied contiguous properties" pursuant to § 51.092, and therefore being entitled to sewer services, which Long Pt. Cooper claims is

sufficient to create a genuine issue of material fact warranting denial of summary judgment.

As an initial matter, "[t]he determination of whether there exists a constitutionally protected property interest is an issue of law," not fact. McGuire v. Indep. Sch. Dist. No. 833, 863 F.3d 1030, 1033 (8th Cir. 2017). Therefore, a purported property interest cannot create a genuine issue of material fact. The court may determine whether, as a matter of law, whether Long Pt. Cooper has a protected interest pursuant to § 51.092, and if the court determines that Long Pt. Cooper does not, then summary judgment is warranted.

A state or local law may create entitlement to a property interest. "[W]hether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks all discretion to deny issuance of the permit or to withhold its approval." Gardner, 969 F.2d at 68. As such, "significant discretion that remain[s] with the zoning authorities defeats the claim of a property interest." Siena Corp. v. Mayor & City Council of Rockville Maryland, 873 F.3d 456, 463 (4th Cir. 2017).

An example of determining whether an "entitlement" property interest existed can be found in Siena Corp., where the plaintiffs planned to build a self-storage facility in an area of Rockville, Maryland that was zoned as "Light Industrial." Id. at 459. Local citizens were concerned about the potential effect of the facility on the neighborhood, so the Rockville Council requested that the Rockville Planning Staff draft a zoning amendment to address these concerns. Id. at 460. The amendment prohibited the location of self-storage facilities within 250 feet of public-school property. After

conducting the proper notice and hearing procedures, the Rockville Council approved the amendment. Because of the new amendment, the plaintiff was no longer able to build its self-storage facility on its property and challenged the amendment as violating substantive due process, among other claims. Under Maryland law, a party obtained a constitutionally protected right in an existing zoning use once the party obtained a building permit. Id. at 461. The plaintiff had not obtained a building permit but argued that it still had a property right because the Rockville Council had no choice to issue it a building permit, which created an entitlement to the permit. Id. at 462. The Fourth Circuit disagreed, explaining that because the Rockville City Code made it clear that issuing a building permit requiring the discretionary approval of various local agencies, the plaintiff had no entitlement to a building permit and therefore no property interest. Id. at 464.

The facts here are similar to those of Siena Corp. Long Pt. Cooper argues that § 51.092 entitles the Properties to being treated as a "denied contiguous property" that is entitled to sewer services; therefore, it has a property interest. However, this argument contradicts the plain language of the ordinance. Section 51.092 clearly states that if a contiguous property is denied annexation, "sanitary sewer services may be provided by the Mount Pleasant Waterworks to such property." ECF No. 1-1 at 38 (emphasis added). Therefore, even if the Properties were treated as "denied contiguous properties," they would not necessarily be entitled to sewer services. It is clear from the "may" language that MPW has discretion in determining whether it will provide sewer services to a denied contiguous property. This discretion "defeats the claim of a property interest." Siena Corp., 873 F.3d at 463.

At the hearing on the motions, Long Pt. Cooper also argued that, pursuant to S.C. Code Ann. § 5-3-150(3), a municipality must "accept" an annexation petition before voting as to whether the property should be annexed, and because the Town "accepted" the Properties' petitions, it created a property interest. Section 5-3-150(3) provides that:

> any area or property which is contiguous to a municipality may be annexed to the municipality by filing with the municipal governing body a petition signed by all persons owning real estate in the area requesting annexation. Upon the agreement of the governing body to accept the petition and annex the area, and the enactment of an ordinance declaring the area annexed to the municipality, the annexation is complete.

S.C. Code Ann. § 5-3-150(3). Long Pt. Cooper reads the statute as creating a two-step process for annexation: first, the Town must "accept" an annexation petition, and then it must vote as to whether the property should be annexed. ECF No. 49 at 5. Long Pt. Cooper alleges that the Town "accepted" the petitions on June 16, 2015 prior to the first reading and the vote on the petitions, Am. Compl. ¶ 8, and then violated the state law. Therefore, while not completely clear to the court, it appears that Long Pt. Cooper contends that because the Town initially "accepted" the petitions, it created a property interest in annexation under S.C. Code Ann. § 5-3-150(3).

As an initial matter, it was MPW who denied sewer services, not the Town. Therefore, it is unclear to the court how the Town could refuse to provide sewer service to the Properties, as alleged in the amended complaint. See Am. Compl. ¶ 32 ("the refusal to provide sewer service to the Properties by Defendants Town and [MPW] . . . denied [Long Pt. Cooper] its rights to substantive due process."). Nevertheless, while the court has doubts regarding Long Pt. Cooper's interpretation of S.C. Code Ann. § 5-3-150(3), the statute is irrelevant to Long Pt. Cooper's substantive due process claim.

The statute relates to the Town's consideration of Long Pt. Cooper's petitions, which included annexation requests, but Long Pt. Cooper's substantive due process claim is about the denial of sewer services to the Properties. The Town's process of considering Long Pt. Cooper's petitions is separate from MPW's decision to deny sewer services. While the court acknowledges that the Town's ultimate decision on Long Pt. Cooper's petitions affects MPW's decision on whether to provide sewer services, there are two different decision-making processes. The Town must first consider a property's petition containing an annexation request and decide whether to accept or deny the petition. After that decision is made, then MPW decides whether to provide sewer services to the property. Here, Long Pt. Cooper only alleges that "the refusal to provide sewer service to the Properties by Defendants Town and [MPW] . . . denied [Long Pt. Cooper] its rights to substantive due process." Am. Compl. ¶ 32. This allegation goes to MPW's decision to not provide sewer services. Long Pt. Cooper does not allege in its amended complaint that the Town's alleged piecemeal treatment of its petitions violated Long Pt. Cooper's substantive due process rights.

Long Pt. Cooper's argument may be more convincing if § 51.092 required MPW to provide sewer services based on the Town's treatment of petitions, meaning the Town's treatment of the petitions would automatically dictate whether a property receives sewer service. However, that is simply not how § 51.092 operates. Section 51.092(A) states that annexation is a required condition for MPW to provide sewer services, and § 51.092(B) explains that MPW <u>may</u> provide sewer services to properties that were denied annexation. There is nothing in § 51.092 requiring MPW to provide sewer services to properties based on how the Town treats their petitions. As

such, the Town's process in handling Long Pt. Cooper's petitions does not bear on the issue of whether MPW's denial of sewer services violated Long Pt. Cooper's substantive due process rights.  Therefore, whether the Town violated S.C. Code Ann. § 5-3-150(3) or whether S.C. Code Ann. § 5-3-150(3) created a property interest is irrelevant.

Long Pt. Cooper also relies on Scott v. Greenville Cty., 716 F.2d 1409 (4th Cir. 1983), to establish that it had a property interest; however, Scott is easily distinguishable from the instant case.  In Scott, the Fourth Circuit explained that "[u]nder South Carolina law settled well before he applied for the building permit, Scott enjoyed an entitlement to the issuance of a permit upon presentation of an application and plans showing a use expressly permitted under the then-current zoning ordinance."  716 F.2d at 1418.  Here, as discussed above, South Carolina law clearly establishes that there is no protected property interest in sewer services.  Sunset Cay, LLC, 593 S.E.2d at 470.  And, also discussed above, it is irrelevant whether the state statute regarding annexation entitles Long Pt. Cooper to a property interest because the property interest relevant to Long Pt. Cooper's substantive due process claim is a property interest in sewer services, not a property interest in the Town's processing of Long Pt. Cooper's petitions.  See Am. Comp. ¶ 32.  Because Long Pt. Cooper has no property interest in obtaining sewer services, the court grants summary judgment as to the substantive due process claim.

**C.  Equal Protection**

Long Pt. Cooper also alleges defendants' refusal to provide sewer service to the Properties "was for the purpose of discriminating against Plaintiff and denied Plaintiff its right to equal protection under the Constitution of the United States."  ECF No. 1-1 at 41. Defendants argue that the sole factual issue in this claim is whether MPW has provided

sewer service to other properties for which their annexation petitions were withdrawn, and because Long Pt. Cooper has not presented any evidence that MPW did provide sewer services to similarly situated properties, summary judgment is warranted. The court finds that there is no evidence of similarly situated properties, and as such, there is no genuine issue of material fact, warranting summary judgment.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotation omitted). However, when a party has not alleged that it was deprived of a fundamental right or that it was subjected to discrimination based on a suspect classification, a court "will uphold the distinctions drawn by [the defendant] if they were 'rationally related to a legitimate state interest.'" Pulte Home Corp., 909 F.3d at 693. Here, Long Pt. Cooper has not alleged that it was deprived of a fundamental right or subjected to discrimination based on a suspect classification. Therefore, the court must determine if defendants' refusal to provide sewer services to the Properties as opposed to its provision of sewer water services to other similar properties was rationally related to a legitimate state interest. See Pulte Home Corp., Maryland, 909 F.3d at 693 (explaining that absent an allegation of a deprivation of a fundamental right or discrimination based on suspect classification, the court need only determine if distinctions are "rationally related to a legitimate state interest"). However, the court need reach the question of whether there was a rational basis for the decision to deny Long Pt. Cooper's request for sewer services

because the court finds that Long Pt. Cooper has not identified any similarly situated properties that received sewer services.

For a plaintiff to succeed on this type of equal protection claim, she must "allege [ ] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). "Similarly situated" means that the others are "are in all relevant respects alike" to the plaintiff. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). When a plaintiff provides no evidence that it was treated differently from others who are similarly situated, the plaintiff's equal protection claim must fail. Tri Cty. Paving, Inc. v. Ashe Cty., 281 F.3d 430, 440 (4th Cir. 2002). For example, in Tri Cty. Paving, Inc., the plaintiff brought an equal protection claim against Ashe County, North Carolina when the county did not issue a building permit for the plaintiff's proposed asphalt plant. Id. at 433. The Fourth Circuit held that the plaintiff's equal protection claim failed in part because the plaintiff only showed that other businesses in Ashe County were granted building permits while the plaintiff's permit was denied. Id. at 440. The court went on to explain that the fact that the county granted permits to other companies was irrelevant because the plaintiff did not show that those companies applied for a building permit to construct a facility with the same environmental and safety concerns as the plaintiff's facility. Id. In other words, the plaintiff did not show that the facilities that received building permits were similarly situated to the plaintiff's facility.

Here, Long Pt. Cooper has failed to present evidence of properties that are similarly situated to the Properties and that have received sewer services. Indeed, Long Pt. Cooper has not identified any other properties that withdrew their annexation petitions

and then subsequently received sewer services from MPW. Long Pt. Cooper compared

its treatment to two other properties: Leland Park and The Farm at Oyster Point.[3]

However, the annexation petitions for these properties were denied, while Long Pt.

Cooper withdrew its petitions. Therefore, these properties are not "in all relevant aspects

alike" because the status of their annexation petitions, which dictates the provision of

sewer services, is different. The only evidence presented about any properties that are "in

all relevant aspects alike" to the Properties is that no such property exists. Duffie's

testimony reflects that he is unaware of another property that has received sewer services

after withdrawing its annexation petition:

> Q: You were asked a number of questions earlier in the deposition about
> your knowledge, since you've been in this business for quite a long time, of
> various properties. So I want to ask you, do you have knowledge of any
> contiguous property where the property owner withdrew an annexation
> petition and then subsequently received sewer services?
> A: I do not.

ECF No. 45-8 at 43. All three members of Long Pt. Cooper were asked the same

question and could not provide any examples of this scenario. ECF No. 45-8 at 18–19,

33, 81. Like the plaintiff in Tri Cty. Paving, Inc., Long Pt. Cooper simply points to other

properties that received sewer services without considering the difference between the

---

[3] The Town argues that its decision about Leland Park occurred after this lawsuit was filed, and therefore it cannot be used as evidence of differential treatment. See Patterson v. Strippoli, 639 F. App'x 137, 143 (3d Cir. 2016) (finding that evidence of similar treatment after the plaintiffs filed their lawsuit did not defeat their claim that they were treated differently); Gonzales v. Police Dep't, City of San Jose, Cal., 901 F.2d 758, 761 (9th Cir. 1990) (explaining that in Title VII cases, "other circuits have recognized that the fact that improvements or advancements undertaken after lawsuits have been initiated drastically reduces the probative value of such evidence"). However, these cases do not go as far as stating that post-lawsuit evidence cannot be used. Instead they just question how convincing the evidence would be. Therefore, the court can properly consider the evidence about Leland Park.

properties. As such, there is no genuine issue of material fact as to whether Long Pt. Cooper was treated differently than similarly situated properties, and summary judgment is warranted for the equal protection claim.

As an additional note, the comparison Long Pt. Cooper makes between the Properties and the other properties relates to how the Town treated the other properties' petitions containing their annexation and zoning requests, <u>not</u> the provision of sewer services, which is the basis of its equal protection claim. <u>See</u> ECF No. 49 at 21 ("The evidence supports an inference that <u>the Town treated the annexation application differently</u> than all others by illegally cherry picking the requested approvals." (emphasis added)). With both Leland Park and The Farm at Oyster Point, the Town Council denied the annexation petition because the accompanying zoning request was not approved. Indeed, all of the evidence to which Long Pt. Cooper cites relates to the Town Council's process of considering the properties' annexation and zoning requests. This would be a meaningful distinction if Long Pt. Cooper brought an equal protection claim against the Town for its treatment of Long Pt. Cooper's petitions. But Long Pt. Cooper alleges that defendants denied Long Pt. Cooper its right to equal protection when they "refus[ed] to provide sewer service to the Properties." ECF No. 1-1 at 41. With the alleged violation relating to sewer service, the point of comparison must be whether other properties were provided sewer service, not whether other properties' annexation petitions were treated differently.[4] Therefore, the court grants summary judgment as to the equal protection claim.

---

[4] To this point, Long Pt. Cooper also cites to various deposition testimony about the Town's alleged nefarious motives for granting Long Pt. Cooper's annexation requests but denying the zoning requests. Long Pt. Cooper alleges that the Town Council's plan

### D.  42 U.S.C. § 1983

MPW argues that the court should grant summary judgment on Long Pt. Cooper's

§ 1983 claim because Long Pt. Cooper cannot assert a § 1983 claim that is independent

from its equal protection and substantive due process claims.  The court must "separate

two different issues when a § 1983 claim is asserted against a municipality: (1) whether

plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is

responsible for that violation."  <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115,

120 (1992).  Long Pt. Cooper concedes that its § 1983 claim is based on its equal

protection and substantive due process claims.  As discussed above, the court grants

summary judgment on those claims; therefore, the court also grants summary judgment

on the § 1983 claim.

### E.  Writ of Mandamus, Permanent Injunction, and Damages

The remaining causes of action need only be considered briefly.  For a court to

issue a writ of mandamus,

> the party seeking the writ must demonstrate that (1) he has a clear and
> indisputable right to the relief sought; (2) the responding party has a clear
> duty to do the specific act requested; (3) the act requested is an official act
> or duty; (4) there are no other adequate means to attain the relief he desires;
> and (5) the issuance of the writ will effect right and justice in the
> circumstances.

---

was to create a situation in which Long Pt. Cooper could not develop its properties and
then force them to sell the Properties so the Town could build a park.  ECF No. 49 at 24.
Long Pt. Cooper also cites deposition testimony about the Town Council planned to only
approve Long Pt. Cooper's annexation request and not its zoning request, despite
questioning the legality of doing so.  ECF No. 49 at 6–7.  However, this evidence all
relates to the Town's process and ultimate decision to approve the annexation and deny
the zoning request, not the provision of sewer services.  And Long Pt. Cooper's claims
relate to the refusal to provide sewer services, not to the Town's decision-making process
or its actual decision.  Therefore, while this evidence is certainly suspicious, it plays no
role in the issues before the court.

U.S. ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 502, 511 (4th Cir. 1999). "A writ of mandamus is a drastic remedy and should be granted only in those extraordinary situations when no other remedy is available." United States v. Moore, 9 F. App'x 275, 275 (4th Cir. 2001). Here, even if the court had found that the Town's treatment of Long Pt. Cooper's petitions was a de facto denial, Long Pt. Cooper would still not have a "clear and indisputable right" to sewer services. Section 51.092 clearly states that "sanitary sewer services may be provided by" MPW. ECF No. 1-1 at 38. The provision of sewer services is discretionary; therefore, Long Pt. Cooper would not have a "clear and indisputable right" to sewer services. As a result, the court grants summary judgment for the writ of mandamus claim.

Long Pt. Cooper's claim for a permanent injunction compelling MPW to provide sanitary sewer services is equally unsuccessful. Like a writ of mandamus, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010). To obtain a permanent injunction,

> [a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007). Long Pt. Cooper's claim fails because as discussed above, it is not currently entitled to sewer services. Long Pt. Cooper withdrew its petitions before they could be approved or denied as required by § 51.092 of the Town's ordinances. Therefore, it is simply not entitled to the relief it seeks, and the court grants summary judgment on this claim. And

for all of the reasons stated above, Long Pt. Cooper is not entitled to damages. As a result, the court grants summary judgment for the damages claim.

## IV. CONCLUSION

For the reasons set forth above, the court grants the motions for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 8, 2019**
**Charleston, South Carolina**